1

2

3

4                      UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6

7    LAZARO GUZMAN,                              Case No. 20-cv-04067-JST

8                        Plaintiff,

9          v.                                    **ORDER DENYING PETITION FOR
                                                 WRIT OF HABEAS CORPUS AND
10   JASON PICKETT,                              DENYING CERTIFICATE OF
                                                 APPEALABILITY**
11                       Defendant.
                                                 Re: ECF No. 1
12

13         Before the Court is Petitioner Lazaro Guzman's petition for a writ of habeas corpus, filed

14   pursuant to 28 U.S.C. § 2254 to challenge the validity of his state criminal conviction.  ECF No. 1.

15   Respondent filed an answer to the petition, ECF No. 13, and Guzman declined to file a traverse.[1]

16   After careful consideration, the Court will deny the petition and deny a certificate of appealability.

17   **I.      PROCEDURAL HISTORY**

18         On October 21, 2016, an Alameda County jury found Guzman guilty of nine counts of

19   committing a lewd or lascivious act upon a child under fourteen years of age, one count of

20   aggravated sexual assault of a child, and one count of continuous sexual abuse of a child, Cal.

21   Penal Code §§ 288(a), 269(a)(4), 288.5.  ECF No. 13-4 at 93-103.  The trial court sentenced

22   Guzman to a prison sentence of seventy-five years to life.  *Id*. at 157-58, 164.

23         On December 27, 2017, Guzman appealed his conviction, seeking reversal on nine

24

25   _____
     [1] The deadline to file a traverse was May 12, 2021.  ECF No. 13.  When no traverse was filed,
26   court staff emailed Petitioner's counsel to confirm the failure to file a traverse was intentional.
     Petitioner's counsel responded that the failure was through inadvertence, and that counsel would
27   seek to extend the deadline to file a traverse through June 1, 2021.  After neither a traverse nor a
     request to extend the deadline in which to file a traverse was filed, the Court set June 25, 2021 as
28   the final deadline by which to file a traverse.  ECF No. 16.  No traverse was filed.  The Court
     concludes that Petitioner has chosen not to file a traverse.

United States District Court
Northern District of California

grounds: error in consolidating the two cases, insufficient evidence of distributing obscene matter, improper admission of hearsay testimony, improper admission of non-expert opinion, error in giving a flight instruction, error in the fresh complaint evidence jury instruction, error in giving a propensity evidence jury instruction, errors in sentencing, and cumulative due process error.  ECF 15-3.  The Court of Appeals struck the jury's findings regarding the use of obscene material in the commission of count 6, Penal Code § 1203.066(a)(9), and the jury's multiple victim finding in count 9, Penal Code § 667.61(e).  *People v. Guzman*, No. A150834, 2019 WL 155980, at *1, *9 (Cal. Ct. App. Jan. 10, 2019), *review denied* (Mar. 20, 2019).  The Court of Appeals denied Guzman's direct appeal and affirmed his conviction on all other counts.  *Id.*

Guzman filed in the California Supreme Court a petition for review of the Court of Appeal's affirmance of his conviction.  ECF No. 15-5 at 8.  The California Supreme Court summarily denied the petition on March 20, 2019.  *Id.* at 57.

Guzman filed the instant petition for a writ of habeas corpus on June 18, 2020.  ECF No. 1. He brings six claims based on alleged violations of his right to due process.  On December 8, 2020, this Court ordered Respondent to show cause why the writ should not be granted.  ECF No. 6.  Respondent filed an answer to Guzman's petition on April 2, 2021.  ECF No. 13.

## II.    STATEMENT OF FACTS

The following factual and procedural background is taken from the California Court of Appeal's opinion:[2]

> *Overview of Trial Testimony*
>
> We provide an overview of the trial testimony, reciting the evidence in the light most favorable to the judgment.
>
> A. Sexual Abuse of C. Doe

---

[2] A statement of facts "drawn from the state appellate court's decision . . . is afforded a presumption of correctness that may be rebutted only by clear and convincing evidence."  *Moses v. Payne*, 555 F.3d 742, 746 n.1 (9th Cir. 2009) (citing 28 U.S.C. § 2254(e)(1)).  The Court has independently reviewed the record as required by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Nasby v. Daniel*, 853 F.3d 1049, 1052-54 (9th Cir. 2017).  Based on the Court's independent review, the Court finds that it can reasonably conclude that the state court's summary of facts is supported by the record, unless otherwise indicated in this order.

United States District Court
Northern District of California

Guzman and C.'s mother are cousins. C. referred to Guzman as his "cool uncle" and "looked up to him." In 2004 or 2005, C.'s mother was hosting a party at her apartment. Guzman was at the party. C. – then five or six years old – was asleep in his mother's bed, wearing pajamas. C. woke up because Guzman was "grabbing [his] butt." Guzman kissed C., putting his tongue inside C.'s mouth. Guzman pulled down C.'s pajamas and put his hands on C.'s buttocks. Then Guzman put his penis in C.'s butt and began moving "back and forth." It was painful. C. went to the bathroom. Guzman followed, shutting and locking the door behind him. Guzman put his penis in C.'s "butt," moving "back and forth." C. went back to the bed. Guzman followed him, and put his penis in C.'s "butt" a third time. Eventually, C. fell asleep. Guzman repeatedly told C. not to tell anyone what happened because he would "go to jail."

Another time, C.'s mother dropped C. off at Guzman's house and left to run errands. Guzman showed C. a pornographic video. He pulled down C.'s pants and "forced" his penis into C.'s butt and moved "back and forth." C. asked Guzman to stop because it hurt; Guzman said he "was almost done." Guzman got up and went into the bathroom.

When C. was about eight years old, C.'s mother invited Guzman over for a pumpkin carving contest. That evening, when Guzman and C. were alone together, Guzman pulled down his own pants, grabbed the back of C.'s head, and put his penis in C.'s mouth. C. tried, unsuccessfully, "to push away from" Guzman. Guzman stopped when he heard C.'s mother return. Guzman told C. not to tell his mother what happened.

Later, C. and Guzman were at a relative's house for a birthday celebration. Guzman told C. to go into a different room so C. could orally copulate him. C. knew Guzman's request "wasn't right," so he refused. After the incident, C. left the room whenever he found himself alone with Guzman. C. "didn't want anything to happen."

When C. was 15, he attended a vocational training program where he was "going to have to sleep in a room" with men he "didn't . . . know." C. was worried and uncomfortable. On the first day of the program, an instructor thought C. was wearing his pants too low, so the instructor pulled up C.'s pants. C. became so upset that he called his mother and left the program. The next day, C.'s mother told him he would have to return to the program. In response, C. told his mother what Guzman had done. C. could not "keep it in anymore." He was sad, and angry at himself because he felt the abuse was his fault. C. did not feel comfortable talking about it. C.'s mother noticed a change in C.'s personality starting in first grade, which coincided with the abuse. C., who had been happy and outgoing, became withdrawn.

B. Sexual Abuse of M.

Guzman is M.'s cousin. In 2004, M. was 10 years old and Guzman was 21. Guzman kissed M. and asked her if she wanted to be his girlfriend. She agreed. Guzman told M. to keep their relationship "a secret because people wouldn't understand." M. kept quiet because she knew their relationship was "not something the law permit[ted]"

United States District Court
Northern District of California

and she did not want Guzman "to go to jail."

In the summer of 2004, M. and her brother attended a sleepover at Guzman's sister's apartment. Guzman was there; he watched a movie with M. and her brother. After M.'s brother fell asleep, Guzman led M. into a bedroom and asked her to have sex with him. M. reluctantly agreed and they had sex. It felt uncomfortable and she asked Guzman to stop. He replied, "I'm almost done." When Guzman finished, he got dressed and said his sister's husband was almost home. Then he left the apartment.

Before her 11th birthday, Guzman told M. he had a birthday gift for her. Guzman took M. to the boiler room of his sister's apartment building and locked the door. He gave M. a pendant and told her to turn around so he could put it on. Then he told M. to get on her knees. Guzman pulled down her pants. M. was nervous because she thought they "were going to have sex again." Guzman inserted his penis into M.'s anus. Then they got dressed and left the boiler room.

Guzman and M. attended a family gathering in December 2004. Guzman told M. to go into one of the bedrooms later in the evening, when "everybody else was more drunk." M. complied. Guzman – who was outside – met M. at the bedroom window. As M. sat on the window ledge, Guzman digitally penetrated M.'s vagina and kissed her until someone opened the bedroom door.

In May 2005, M. and her brothers were at their apartment. M. was in the living room; her brothers were in their bedroom. Shortly after M.'s father left, Guzman arrived. He kissed M. and they had intercourse on the living room floor. Then they had anal sex. M. believed she was in love with Guzman and that they "were in a real relationship." During the summer of 2005, M. and Guzman had sex numerous times, often at her apartment, while her parents were at work. M. hid her actions from her family.

Guzman repeatedly asked M. to let him spend the night at her family's apartment. M. had previously agreed, but had never followed through because she "was scared about getting caught." In October 2005, M. let Guzman into her family's apartment through a side door and hid him in the closet. While her family slept, M. and Guzman had sex. M. was nervous because "it was very risky." The plan was for Guzman to sneak out before her family woke up, but M. and Guzman overslept. Guzman hid in the closet, waiting for M.'s family to leave. M.'s mother opened the closet "to get some shoes," saw Guzman, and "started yelling, asking why he was here." M.'s father came into the room. He was "very mad." He punched and kicked Guzman. Other family members arrived and everyone "started arguing [about] why [Guzman] was there." M. lied and told her family that Guzman had arrived at the apartment, drunk, and that she had hidden him in the closet.

Eventually, Guzman left the apartment. He disappeared from M.'s life for several months. M. learned that Guzman "was going to be kicked out of [his] house and he was going to turn himself in." Around this time, Guzman told C.'s mother that he had been in a physical altercation with M.'s father, and that he was "in trouble" because he

had sex with M. and her family "knew what was going on."

In mid-2006, Guzman returned to Oakland. In June, M. – who was 12 years old – skipped school several times and had sex with Guzman. In August, M.'s family moved to Oregon "to get . . . away from [Guzman]." M. did not want to move, so she ran away and spent a week with Guzman. During that week, M. and Guzman had sexual intercourse several times.[FN2] Guzman planned to "leave the state" with M. Eventually, however, M. returned home and moved with her family to Oregon. In Oregon, M. went to a Child Abuse Response and Evaluation Services facility, where she provided some information about her relationship with Guzman. M. withheld details because she did not want Guzman "to get in trouble." M. had sexual intercourse with Guzman in Oregon, and once in Oakland. When M. was 16 years old, she decided to "cut all ties" with Guzman because his "demands . . . didn't make sense anymore."

> [FN2] M.'s mother collected the clothes and underwear M. was wearing and stored them in a bag until several years later, when M.'s mother learned Guzman was being investigated by law enforcement. An Oakland Police Department criminalist performed a DNA analysis on semen found on M.'s underwear. The DNA profile matched Guzman. In 2005 and 2006, Guzman gave M. cards and handwritten letters professing his love for, and devotion to, her.

C. Defense Testimony

Guzman denied sexually abusing C. He also denied having a sexual relationship with M. before 2011. Guzman claimed he entered M.'s apartment in 2004 by mistake, when he was drunk. M.'s father hit Guzman, for reasons Guzman did not understand. Guzman moved to Reno after hearing rumors about his involvement with M. Guzman claimed he moved to Reno to work, and to "get away" from the "tense environment" created by M.'s father. Guzman returned to Oakland in 2006. He admitted writing a love letter and giving it to M. in 2006. Guzman's wife and sister testified on Guzman's behalf.

*Guzman*, 2019 WL 155980, at *1-3.

III.    STANDARD OF REVIEW

A petition for a writ of habeas corpus is governed by AEDPA. This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable

5

United States District Court
Northern District of California

1   application of, clearly established Federal law, as determined by the Supreme Court of the United

2   States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in

3   light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Additionally,

4   habeas relief is warranted only if the constitutional error at issue "had substantial and injurious

5   effect or influence in determining the jury's verdict."  *Penry v. Johnson*, 532 U.S. 782, 795 (2001)

6   (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

7          A state court decision is "contrary to" clearly established Supreme Court precedent if it

8   "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it

9   "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme]

10  Court and nevertheless arrives at a result different from [its] precedent."  *Williams v. Taylor*, 529

11  U.S. 362, 405-06 (2000).  "Under the 'unreasonable application' clause, a federal habeas court

12  may grant the writ if the state court identifies the correct governing legal principle from [the

13  Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's

14  case."  *Id.* at 413.  "[A] federal habeas court may not issue the writ simply because that court

15  concludes in its independent judgment that the relevant state-court decision applied clearly

16  established federal law erroneously or incorrectly.  Rather, that application must also be

17  unreasonable."  *Id.* at 411.

18         Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's

19  jurisprudence.  "[C]learly established Federal law, as determined by the Supreme Court of the

20  United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions

21  as of the time of the relevant state-court decision."  *Id.* at 412.  "A federal court may not overrule a

22  state court for simply holding a view different from its own, when the precedent from [the

23  Supreme] Court is, at best, ambiguous."  *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003).

24         The district court reviews the "last reasoned decision" of the state court.  *Ylst v.

25  Nunnemaker*, 501 U.S. 797, 803-04 (1991).  All of Guzman's claims were raised on direct review

26  and denied in a reasoned decision by the California Court of Appeal before being denied

27  summarily by the California Supreme Court.  The Court therefore examines the California Court

28  of Appeal's decision.

6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## IV.   DISCUSSION

Guzman raises the following six claims for federal habeas relief based on alleged violations of his right to due process: (1) improper consolidation of charges; (2) improper admission of Guzman's out-of-court statements about "liking kids"; (3) improper admission of testimony about the interview demeanor of C.; (4) improper jury instruction regarding fresh complaint evidence; (5) improper jury instruction regarding the use of propensity evidence; and (6) cumulative error of any combination of the above purported errors.[3]   ECF No. 1.

### A.   Consolidation of Charges

Guzman argues that consolidation of the two cases regarding C. and M. violated his due process rights to a fair trial because the evidence was not cross-admissible and because consolidation impermissibly combined a weak case with a strong case.  Improper joinder in itself does not violate the Constitution.  *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986).  However, a joinder of counts may sufficiently prejudice a defendant to render his trial fundamentally unfair in violation of due process.  *Grisby v. Blodgett*, 130 F.3d 365, 370 (9th Cir. 1997); *Herd v. Kincheloe*, 800 F.2d 1526, 1529 (9th Cir. 1986).

There is a "high risk of undue prejudice whenever . . . joinder of counts allows evidence of other crimes to be introduced in a trial of charges with respect to which the evidence would otherwise be inadmissible."  *United States v. Lewis*, 787 F.2d 1318, 1322 (9th Cir. 1986) (quoting *United States v. Daniels*, 770 F.2d 1111, 1116 (D.C. Cir. 1985)).  But joinder generally does not result in prejudice if the evidence of each crime is simple and distinct – even if the evidence is not cross-admissible – and the jury is properly instructed so that it may compartmentalize the evidence.  *Bean v. Calderon*, 163 F.3d 1073, 1085-86 (9th Cir. 1998); *see Davis v. Woodford*, 384 F.3d 628, 638-39 (9th Cir. 2004) (determining that denial of a motion to sever trial of capital and

---

[3] Respondent asserts that Guzman's claims – except for his cumulative error claim – were not exhausted and should not be considered by this Court because they were not raised "at all" in Guzman's petition to the California Supreme Court.  ECF 13-1 at 16, 33-35, 40-41, 45-46, 51.  The record belies this representation.  Guzman presented each of the claims raised here to the California Supreme Court, describing them as violations of his federal right to due process, and recounting the operative facts underlying each claim with appropriate specificity.  Each claim has been exhausted and therefore may be reviewed by this Court.

1    noncapital charges based on separate incidents was not a violation of due process because

2    evidence was cross-admissible, the weight of the evidence with respect to each incident was

3    roughly equal, the evidence as to each incident was distinct, and the jury was properly instructed);

4    *Sandoval v. Calderon*, 241 F.3d 765, 773 (9th Cir. 2001) (holding petitioner's trial was not

5    prejudiced by joinder given the strength of the prosecution's case against petitioner on both sets of

6    murders and the cross-admissibility of the evidence).

7        A federal court reviewing a state conviction under 28 U.S.C. § 2254 does not concern itself

8    with state law governing severance or joinder in state trials.  *Grisby*, 130 F.3d at 370.  Its inquiry

9    is limited to the petitioner's right to a fair trial under the United States Constitution.  *Id.*  To

10   prevail, therefore, the petitioner must demonstrate that the state court's joinder resulted in

11   prejudice so great that it rendered his trial fundamentally unfair.  *Id.*  In addition, the

12   impermissible joinder must have had a substantial and injurious effect or influence in determining

13   the jury's verdict.  *Sandoval*, 241 F.3d at 772.

14          1.      **Procedural History**

15          The state appellate court summarized the underlying facts and rejected Guzman's claim as

16   follows:

17                 *No Abuse of Discretion in Consolidating the Charges*

18                 In July 2015, the prosecution filed an information charging Guzman
                 with crimes against C. In November 2015, the prosecution filed a
19                 second information charging Guzman with crimes against M. After
                 preliminary hearings in both cases, the prosecution moved to
20                 consolidate the charges, arguing the evidence in both cases was
                 "cross-admissible," the evidence was not "[u]nusually
                 [i]nflammatory," and neither case was "inordinately weak or strong."
21                 The court consolidated the charges over Guzman's objection.

22                 An accusatory pleading may charge two or more different offenses
                 "of the same class of crimes or offenses." (§ 954.) The crimes here
23                 were of the same class. (*People v. Nguyen* (2010) 184 Cal.App.4th
                 1096, 1112.) We review the court's decision to join the charges for
24                 abuse of discretion. As relevant here, "[r]efusal to sever may be an
                 abuse of discretion where: (1) evidence on the crimes to be jointly
25                 tried would not be cross-admissible in separate trials; (2) certain of
                 the charges are unusually likely to inflame the jury against the
26                 defendant; [and] (3) a 'weak' case has been joined with a 'strong'
                 case, or with another 'weak' case, so that the 'spillover' effect of
27                 aggregate evidence on several charges might well alter the outcome
                 of some or all of the charges[.]" (*People v. Sandoval* (1992) 4 Cal.4th
28                 155, 172-173.)

United States District Court
Northern District of California

8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Guzman argues the court erred by consolidating the charges because the offenses were not cross-admissible. He is incorrect. Evidence Code section 1108 permits the jury in a sexual offense case to consider evidence of other sexual offenses for any relevant purpose. (*People v. Falsetta* (1999) 21 Cal.4th 903, 911, 922.) Guzman seems to suggest the evidence was not cross-admissible because the crimes were motivated by "distinct sexual impulses." But Evidence Code section 1108 does not require a degree of similarity between the charged and uncharged offenses. (See *People v. Cordova* (2015) 62 Cal.4th 104, 114 [evidence of sexual assaults admissible notwithstanding differences in the victims' ages and genders].) In any event, the crimes here were similar in that Guzman took advantage of his position of trust to sexually abuse his young relatives. Contrary to Guzman's claim, the evidence was manifestly relevant.[FN3]

> [FN3] Guzman does not persuasively argue Evidence Code section 352 mandated exclusion of the offenses. (*People v. Branch* (2001) 91 Cal.App.4th 274, 281.) The sexual abuse occurred around the same time period, and the offenses were "equally abhorrent." (See *People v. Price* (1991) 1 Cal.4th 324, 389-390.) There was no risk of confusing the issues or consuming undue time.

Next, Guzman contends it was improper to consolidate C.'s "weak" case with M.'s "[s]trong" case. We disagree. To "demonstrate the potential for a prejudicial spillover effect, defendant must show an 'extreme disparity' in the strength or inflammatory character of the evidence." (*People v. Ybarra* (2016) 245 Cal.App.4th 1420, 1436.) Guzman has not satisfied this burden. We have already concluded the evidence was equally inflammatory. Guzman's ad hominem attacks on C.'s credibility are not persuasive; the evidence as to M. was not significantly stronger than the evidence as to C. (*People v. Price, supra,* 1 Cal.4th at p. 389.) The court did not abuse its discretion by consolidating the charges. (*People v. Merriman* (2014) 60 Cal.4th 1, 38.)

We reject Guzman's contention that consolidation resulted in a trial that was fundamentally unfair. (See *People v. Mendoza* (2000) 24 Cal.4th 130, 161, superseded by statute on other grounds as stated in *People v. Brooks* (2017) 3 Cal.5th 1, 63, fn. 8.) Guzman's remaining arguments on this issue have been considered and merit no further discussion.

*Guzman*, 2019 WL 155980, at *3-4.

## 2.    Analysis

Guzman argues that consolidation of C. and M.'s cases was prejudicial and led to a

fundamentally unfair trial because the evidence from each case was not cross-admissible, and

there was a substantial risk of spillover from a strong to a weak case.[4]  ECF No. 1 at 47-64.
Respondent asserts the two cases were cross-admissible due to their similarities, and consolidation
was not prejudicial.  ECF No. 13-1 at 5-22.  Respondent also notes that the jury demonstrated its
ability to evaluate the evidence and the two cases separately by reaching independent verdicts for
each case.  *Id.* at 21-22.

Guzman does not cite any federal authority to support his position that joinder of C. and
M.'s cases resulted in a fundamentally unfair trial.  In evaluating potential prejudice due to
consolidation, "the Ninth Circuit focuses particularly on cross-admissibility of evidence and the
danger of 'spillover' from one charge to another, especially where one charge or set of charges is
weaker than another."  *Davis v. Woolford*, 384 F.3d 628, 638 (9th Cir. 2004).

First, the evidence in each case was cross-admissible.  Guzman argues that the charges
relating to C. did not provide relevant propensity evidence for the charges related to M. and vice
versa because "homosexual sodomy and post-menstrual heterosexual intercourse constitute
distinct sexual impulses or motives."  ECF No. 1 at 50.  Guzman explains that "sex offenses are
not made *conclusively* admissible by section 1108 but rather qualify for admission . . . *if they are
relevant and *if* not unduly prejudicial."  *Id*. at 54 (emphasis in original).  Respondent contends that
the "differences in ages and genders of petitioner's victims did not render his crimes against each
one dissimilar to the point of precluding cross-admissibility.  Numerous cases have shown that
perfect symmetry between charged and uncharged offenses is unnecessary so long as the offenses
demonstrate a generally consistent disposition."  ECF Nos. 13-1 at 10, 21-22.  Respondent also
argues that the probative value outweighed any prejudicial effect.  ECF No. 13-1 at 19-20.

"In a criminal action in which the defendant is accused of a sexual offense, evidence of the
defendant's commission of another sexual offense or offenses is not made inadmissible by Section

---

[4] Guzman also argues that consolidation was improper because there was confusion of the issues
due to the joinder, and there was late discovery of evidence in M.'s stronger case.  ECF No. 1 at
50-64.  As discussed below, the jury verdict demonstrates that the jury was able to consider these
cases separately and come to distinct conclusions.  Further, the state appellate court found that the
evidence in the cases was "equally inflammatory."  *Guzman*, 2019 WL 155980, at *4.  The Court
notes that the primary evidence in each case was victim testimony and concludes that the inclusion
of DNA evidence related to M.'s case did not result in an extreme disparity that would cause an
improper consolidation.

United States District Court
Northern District of California

1101 [general rule against character evidence], if the evidence is not inadmissible pursuant to

Section 352 [general rule against substantially prejudicial evidence]." Cal. Evid. Code § 1108(a).

Modeled after Rule 413 of the Federal Rules of Evidence, Section 1108 "provides the trier of fact

in a sex offense case the opportunity to learn of the defendant's possible disposition to commit sex

crimes . . . [as] evidence that he committed other sex offenses . . . [because this evidence] is at

least circumstantially *relevant* to the issue of his disposition or propensity to commit these

offenses." *People v. Falsetta*, 21 Cal. 4th 903, 915 (1999) (emphasis in original).

California courts have held that sex offense cases do not need to be of precisely the same

nature to be cross-admissible. *See Cordova*, 62 Cal. 4th 104 at 134 (holding that there was

sufficient commonality between crimes because "[a]ll were sex offenses committed late at night

inside a home against young children of similar age, which permitted the inference that defendant

had a propensity to commit such sex offenses" despite the different levels of violence in the

crimes); *People v. Cromp*, 153 Cal. App. 4th 476, 470-80 (2007) (holding that evidence regarding

the rape of a developmentally disabled woman was admissible to prove charges of lewd acts

against two young boys because "committ[ing] a sexual offense on a particularly vulnerable

victim in the past logically tends to prove [defendant] did so again with respect to the current

offenses").

"[Guzman] can point to no Supreme Court precedent establishing that admission of

propensity evidence [related to allegations of sexual offenses], as here, to lend credibility to a sex

victim's allegations, and thus indisputably relevant to the crimes charged, is unconstitutional."

*Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008). Courts in this district have held that

California Evidence Code Section 1108 allows courts "to admit evidence of [a] defendant's

commission of other sex offenses, thus allowing the jury to learn of the defendant's possible

disposition to commit sex crimes." *Skidmore v. Lizarraga*, No. 14-CV-04222-BLF, 2020 WL

109767, at *14 (N.D. Cal. Jan. 9, 2020) (quoting *People v. Cordova*, 62 Cal. 4th 104, 132 (2015)).

This evidence is presumed admissible and is "to be excluded only if its prejudicial effect

substantially outweighs its probative value in showing the defendant's disposition to commit the

charged sex offense or other relevant matters." *Id.* The Court concludes that the evidence here

United States District Court
Northern District of California

1    was cross-admissible.

2          Second, even if evidence in the cases were not cross-admissible, consolidation was still

3    permissible because the evidence was sufficiently simple and distinct to allow the jury to make

4    independent determinations for each charge.  *See Bean*, 163 F.3d at 1085-86 (concluding that

5    consolidation resulted in a constitutional violation due to the disparity of evidence but noting that

6    "[the court is] mindful that prejudice generally does not arise from joinder when the evidence of

7    each crime is simple and distinct, even in the absence of cross-admissibility"). There is no

8    potential spillover effect from a stronger to a weaker case if the jury "can reasonably be expected

9    to 'compartmentalize the evidence' so that evidence of one crime does not taint the jury's

10   consideration of another crime."  *United States v. Johnson*, 820 F.2d 1065, 1071 (9th Cir. 1987)

11   (quoting *United States v. Douglass*, 780 F.2d 1472, 1479 (9th Cir.1986)).  For example, courts

12   have recognized that the jury acquitting a defendant of some charges but convicting the defendant

13   of others is "affirmative evidence of the jury's ability to assess . . . evidence [for the two cases]

14   separately."  *Bean*, 163 F.3d at 1086.  "[P]rejudice [is] further limited through an instruction

15   directing the jury to consider each count separately."  *Davis*, 384 F.3d at 639.

16         Guzman contends that the first case was weaker than the second because C.'s testimony

17   was less credible than M.'s.  ECF No. 1 at 55-57.  However, questions of witness credibility are

18   for the jury to decide.  *See Sandoval*, 241 F.3d at 773 (rejecting defendant's argument that a

19   witness should not have been considered credible because they were impeached).  Moreover, the

20   prosecution set out each offense separately in its closing argument and asked the jury to use the

21   facts of offenses committed against one victim as evidence with respect to offenses against the

22   other victim only if the jury found Guzman to be guilty of an offense beyond a reasonable doubt.

23   ECF No. 15 at 17-61.  The trial court also instructed the jury that "[e]ach of the counts charged in

24   this case is a separate crime.  You must consider each count separately and return a separate

25   verdict for each one."  *Id.* at 75.  Most importantly, the jury acquitted Guzman of three charges of

26   "substantial sexual conduct" against C., illustrating that it considered the evidence separately and

27   reached distinct conclusions regarding the different alleged conduct.  ECF No. 13-4 at 95-97.

28         Consolidation did not result in a fundamentally unfair trial because the evidence "was

United States District Court
Northern District of California

12

1   presented in a straightforward manner, with the victims testifying at trial.  They were subject to

2   cross-examination, and the jury was able to evaluate their credibility." *Young v. Barnes*, No. C 14-

3   03550 EJD (PR), 2016 WL 48118, at *16 (N.D. Cal. Jan. 5, 2016).  The Court rejects this claim.

4         **B.**     **Evidentiary Claims**

5         Guzman alleges two claims of evidentiary error. On federal habeas review, a court does not

6   consider whether evidence was properly admitted under state evidentiary rules; its review is

7   limited to whether the admission of the challenged evidence "so infused the trial court with

8   unfairness as to deny due process of law."  *Estelle v. McGuire*, 502 U.S. 62, 67-68, 75 (1991)

9   (quotation marks omitted).  "Even where it appears that evidence was erroneously admitted, a

10  federal court will interfere only if it appears that its admission violated fundamental due process

11  and the right to a fair trial." *Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999) (citations

12  omitted).  The Supreme Court "has not yet made a clear ruling that admission of irrelevant or

13  overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of" a

14  writ of habeas corpus.  *Holley v. Yarborough*, 568 F.3d 1019, 1101 (9th Cir. 2009).  "[E]ven

15  clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit

16  the grant of federal habeas corpus relief if not forbidden by clearly established Federal law, as laid

17  out by the Supreme Court."  *Id.* (quotation marks and citations omitted).

18        Failure to comply with state rules of evidence "is neither a necessary nor a sufficient basis

19  for granting [federal] habeas relief" on due process grounds.  *Jammal v. Van de Kamp*, 926 F.2d

20  918, 919 (9th Cir. 1991).  In federal habeas review, the due process inquiry is whether the

21  admission of evidence was "arbitrary or so prejudicial that it rendered the trial fundamentally

22  unfair."  *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995) (citations omitted). "Only if there

23  are *no* permissible inferences the jury may draw from the evidence can its admission violate due

24  process."  *Jammal*, 926 F.2d at 920 (emphasis in original).

25        **1.**     **Admission of Hearsay Testimony**

26        Guzman asserts that the trial court erred in admitting Calamateo's hearsay testimony about

27  Guzman "liking kids" because it was not reliable or trustworthy and unfairly led the jury to

28  conclude that Guzman had a propensity for pedophilia.  ECF No. 1 at 68-78.

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

### a.     Procedural History

The state appellate court summarized the underlying facts and rejected Guzman's claim as follows:

> *No error in Admitting Guzman's Statements to Carlos Calamateo*
>
> A.  Background
>
> The prosecutor moved in limine to introduce evidence that Guzman admitted liking "little kids."  According to the motion, Guzman attended a party hosted by Calamateo in 2003 or 2004.  Calamateo heard Guzman say he "liked 'little kids'" and explained "he had sex with very young girls in Guatemala because it was so easy to do."  The prosecutor argued the evidence was a party admission (Evid. Code, § 1220) and prior conduct offered to prove motive and intent (Evid. Code, § 1101, subd. (b)).  Defense counsel argued the evidence was "unreliable" hearsay, inadmissible under Evidence Code section 352.  The court admitted the evidence pursuant to Evidence Code sections 1220 and 1101, subdivision (b).
>
> At trial, Calamateo testified he hosted a party in 2004, where he heard Guzman say "he likes . . . little, young womans, kids. . . . [¶] . . . [¶] [N]ine, 10 years old, 11 years old, something like that."  Guzman also said "[i]t was easy to . . . get them into bed[.]"  These comments angered Calamateo, who had two daughters.  Calamateo told Guzman to "be careful."  In response, Guzman suggested he was doing that "back in Guatemala."  Calamateo, however, saw Guzman looking at M. during the party in a "suspicious" way that worried Calamateo.  The prosecution offered a transcript of Calamateo's police interview, where Calamateo said Guzman commented he "likes to . . . have sex with . . . kids."
>
> B.  The Evidence Was Admissible under Evidence Code Section 1220 and Not Subject to Exclusion under Evidence Code Section 352
>
> Guzman claims the court erred by admitting "Calamateo's hearsay testimony."  We are not persuaded.  "Evidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party . . . ." (Evid. Code, § 1220.)  This hearsay "exception applies to all statements of the party against whom they are offered."  Here, Guzman "made the statements, the statements were offered against [him], and [he] was a party to this action.  Thus, the statements came within an exception to the hearsay rule.  [Citation.]  They were admissible against [Guzman]."  (*People v. Rodriguez* (2014) 58 Cal.4th 587, 637.)  Calamateo's failure to recall the exact words Guzman used does not render the statements inadmissible, nor does the fact that Calamateo translated Guzman's statements from Spanish to English.  (See *People v. Cortez* (2016) 63 Cal.4th 101, 126; *People v. Kraft* (2000) 23 Cal.4th 978, 1034-1035.)
>
> "Under Evidence Code section 352, the trial court enjoys broad discretion in assessing whether the probative value of particular

14

evidence is outweighed by concerns of undue prejudice[.]"  (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.) The court's "exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.'"  (*Id.* at pp. 1124–1125.) There was no abuse of discretion here.  Guzman's comments were highly probative of his motive and intent in committing the sexual assaults.  (See *People v. Memro* (1995) 11 Cal.4th 786, 863–864.) And the evidence, while obviously damaging to Guzman, was not unduly prejudicial under Evidence Code section 352.  (See *People v. Johnson* (2010) 185 Cal.App.4th 520, 534.) Guzman's reliance on *People v. Albarran* (2007) 149 Cal.App.4th 214 – which concerned the prejudicial effect of gang evidence – has no application here.  The court did not abuse its discretion in admitting Calamateo's testimony.  (*People v. Cortez, supra,* 63 Cal.4th at p. 125.)

*Guzman*, 2019 WL 155980, at *4-5.

### b.      Analysis

Guzman contends that Calamateo's testimony was unreliable and led to an unfair inference that Guzman had a propensity of sexually abusing minors.  ECF No. 1 at 68-80.  He argues it was unclear what the out-of-court statement was because Calamateo was paraphrasing and was translating the statement from Spanish to English.  *Id.* at 69-71.  Guzman also asserts the trial court did not give enough consideration to Calamateo's potential motive to lie.  According to Guzman, testifying "would render [Calamateo] a critical and needed witness," and make him eligible for a visa.  *Id.* at 71.  Respondent argues that the statement was not improper propensity evidence because it gave rise to "a legitimate inference as to petitioner's motive and intent."  ECF No. 13-1 at 37-38.  Respondent also posits that the testimony was not extensive or inflammatory in light of the detailed accounts of sexual abuse given by the victims.  ECF No. 13-1 at 37-39.

Guzman has failed to establish that the admission of his alleged statements to Calamateo violated due process under deferential AEDPA review.  The Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ."  *Holley*, 568 F.3d at 1101 (holding that trial court's admission of irrelevant evidence resulted in a trial that was "fundamentally unfair" under Ninth Circuit precedent but not contrary to, or an unreasonable application of, clearly established Supreme Court precedent under 28 U.S.C. § 2254(d)).  Therefore, even if this Court were to conclude that admission of the evidence resulted in a trial that was fundamentally unfair under

1    Ninth Circuit precedent, it would nonetheless be "without power" to grant habeas relief "[u]nder

2    the strict standards of AEDPA." *Id.* at 1101 & n.2.  Further, Guzman does not sufficiently

3    illustrate how Calamateo's statement "infused the trial court with unfairness as to deny due

4    process of law." *Estelle*, 502 U.S. at 75 (quotation marks omitted).  Guzman cites no clearly

5    established federal law that could warrant granting habeas relief on this evidentiary claim.

6         Moreover, admission of Calamateo's statements did not violate Ninth Circuit law, as

7    "there [was] a rational inference the jury could draw from the challenged evidence, an inference

8    that is not constitutionally impermissible." *Jammal*, 926 F.2d at 920.  As the state appellate court

9    noted, Calamateo's testimony regarding "Guzman's comments were highly probative of

10   [Guzman's] motive and intent in committing the sexual assaults." *Guzman*, 2019 WL 155980, at

11   *5.  The Court also notes that the prosecution did not use the statement to argue that Guzman was

12   likely to have acted in one way because of how he acted in the past.  Admission of this statement

13   did not render the trial fundamentally unfair and did not violate Guzman's right to due process.

### 2.    Admission of Non-Expert Testimony

15        Guzman asserts that the trial court violated his due process right to a fair trial in admitting

16   Officer Chavarria's testimony regarding C.'s demeanor during the CALICO interview because it

17   amounted to implicit vouching of the veracity of C.'s testimony, which was otherwise not

18   credible.  ECF No. 1 at 82-85.

### a.    Procedural History

20        The state appellate court summarized the underlying facts and rejected Guzman's claim as

21   follows:

> *No Error in Allowing Testimony on C.'s Demeanor*
>
> A.  Background
>
> At trial, Officer Chavarria described her experience investigating sex
> crimes and using "CALICO" to interview children. Chavarria had
> observed about 50 interviews with teenagers who claimed they were
> sexually abused; she noted teenage boys tended to "act more shamed"
> and "embarrassed" and that they had "a harder time" discussing what
> "happened to them." The court overruled defense counsel's "improper
> opinion" objection and allowed Chavarria to testify based on her
> experience and training.
>
> Chavarria arranged and observed C.'s CALICO interview. When

16

United States District Court
Northern District of California

asked to describe his demeanor, Chavarria testified C. "was embarrassed. Shamed, sad. He had a difficult time disclosing what happened to him. He was slumped over in his chair, had a difficult time making eye contact. He covered his face, he cried. He was emotional[.]" When Chavarria opined that she was not surprised by this behavior because C. "had horrible things done to him," the court sustained defense counsel's "vouching" objection and struck the testimony. Chavarria then clarified that C.'s behavior was not unusual in her experience with CALICO interviews of teenage boys.

Officer Tomlinson testified he met with C. in March 2015. When asked to describe C.'s demeanor, Tomlinson testified he was "very reserved, seemed very distraught. He cried for a little bit. [They] had to take some breaks . . . so that he could collect himself." C. seemed "very upset or disturbed." When Tomlinson testified "it's very hard for a young man, or really anybody, who's gone through a situation like this—" defense counsel objected. The court sustained the objection and struck the testimony.

B.   No Error in Admitting Chavarria's Testimony

Guzman claims "Chavarria was not qualified to proffer" her opinions. We disagree. "[A] witness may provide an opinion if it is rationally based on what . . . she perceived and if it is helpful to a clear understanding of the testimony." (*People v. Houston* (2012) 54 Cal.4th 1186, 1221.) "'[A] witness may testify about objective behavior and describe behavior as being consistent with a state of mind.'" (*People v. Smith* (2015) 61 Cal.4th 18, 46.) Here, Chavarria did just that: she described C.'s demeanor—his posture, body language, and emotional state—during the CALICO interview based on her personal observations and her training and experience. (*People v. Farnam* (2002) 28 Cal.4th 107, 153.) She was not, as Guzman argues, testifying as an "expert in child psychology." Nor are we persuaded Chavarria was "vouching" for C. Chavarria did not express an opinion on C.'s veracity. Instead, she described how C. comported himself during the interview and contextualized his conduct with her observations of other teenage boys during CALICO interviews. (*People v. Houston, supra,* at pp. 1221–1222.)

*People v. Sergill* (1982) 138 Cal.App.3d 34 is easily distinguishable. There, two police officers testified the victim was "telling the truth," and the trial court told the jury one officer was "especially qualified to render his opinion as to whether a person reporting a crime was telling the truth." (*Id.* at pp. 40, 41.) Chavarria's testimony "bears no resemblance to the testimony found inadmissible in *Sergill*" (*People v. Rodriguez, supra,* 58 Cal.4th at p. 631) and the court here did not comment on Chavarria's qualification to opine on a witness's veracity.

*Guzman*, 2019 WL 155980, at *5-6.

b.      **Analysis**

Guzman argues that Officer Chavarria's testimony describing C.'s demeanor during the

CALICO interview amounted to improper vouching because she implicitly presumed that sexual

17

1    abuse had occurred when she stated that boys generally acted "more shamed [and] embarrassed

2    over these incidents."  ECF No. 1 at 84-85.  Respondent argues that Officer Chavarria did not

3    vouch for C. but instead gave descriptions about his external behavior during the interview, such

4    as his posture, body language, emotional state, and reluctance to speak.  ECF No. 13-1 at 43.

5    Respondent explains that Officer Chavarria's testimony did not make correlations between C.'s

6    demeanor and veracity, but only contextualized his demeanor by comparing it to other boys she

7    had interviewed.  *Id.* at 44.

8           As with Guzman's other evidence claim, Guzman cites no federal law to support his

9    position that admitting Officer Chavarria's testimony regarding C.'s demeanor during the

10   interview was a violation of his right to due process under deferential AEDPA review.  The

11   Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial

12   evidence constitutes a due process violation sufficient to warrant issuance of the writ."  *Holley*,

13   568 F.3d at 1101.  The admission of Chavarria's testimony therefore was not a violation of

14   Guzman's right to due process under any clearly established Supreme Court law.

15          Moreover, there were reasonable, constitutional inferences that the jury could draw from

16   Chavarria's testimony.  *See Jammal*, 926 F.2d at 920.  Such rational inferences include that C. had

17   a similar demeanor to other children who participated in a CALICO interview and that he was

18   reluctant to speak about his alleged sexual abuse.

19          Guzman points to several Ninth Circuit cases that define vouching and explain why it is

20   generally impermissible.  *See e.g.*, *United States v. Necoechea,* 986 F.2d 1273, 1276 (9th Cir.

21   1993) ("Vouching consists of placing the prestige of the government behind a witness through

22   personal assurances of the witness's veracity, or suggesting that information not presented to the

23   jury supports the witness's testimony.").  However, the cases relied upon by Guzman are

24   distinguishable because the defendants alleged that the prosecution vouched for its own witnesses.

25   *Id.* at 1276; *United States v. Roberts*, 618 F.2d 530, 534 (9th Cir. 1980).  There was no

26   prosecutorial vouching here.  Instead, Officer Chavarria, a witness, testified as to C.'s external

27   demeanor and contextualized her observations by describing her experiences in other interviews.

28   In addition, the trial court sustained objections to Officer Chavarria's testimony that assumed the

United States District Court
Northern District of California

18

truth of C's allegations and ordered the jury to disregard it.  ECF No. 13-1 at 43, fn 7.  The trial court therefore mitigated any potentially impermissible vouching that may have occurred.

Finally, even if the trial court admitted Chavarria's testimony in error, Guzman would have to demonstrate that its admission infused the trial court with such unfairness that it "violated fundamental due process and the right to a fair trial."  *Henry*, 197 F.3d at 1031.  However, Guzman contends that "the error in admitting Chavarria's expertise should be *evaluated as part of a complex of errors* that deprived Mr. Guzman of a fair trial."  ECF No. 1 at 84 (emphasis added).  In so doing, Guzman seems to concede that Officer Chavarria's testimony concerning C.'s demeanor did not "infuse[] the trial court with unfairness as to deny due process of law."  *Estelle*, 502 U.S. at 75 (quotation marks omitted).  Guzman is not entitled to relief on this claim.

### C.      Jury Instruction Claims

"When considering an allegedly erroneous jury instruction in a habeas proceeding, [a court] first considers whether the error in the challenged instruction, if any, amounted to 'constitutional error.'"  *Morris v. Woodford*, 273 F.3d 826, 833 (9th Cir. 2001) (quoting *Calderon v. Coleman*, 525 U.S. 141, 146 (1998) (per curiam)).  To obtain federal collateral relief for jury instruction errors, a petitioner must show that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  *Estelle*, 502 U.S. at 72 (quotation marks omitted).  The instruction must be considered in the context of the instructions as a whole and the trial record; it may not be judged in isolation.  *Id.*  The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly."  *Id.* at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).  In addition, relief may not be granted unless "the error had a substantial and injurious effect on the jury's verdict" – i.e., "that the defendant was actually prejudiced by the error."  *Coleman*, 525 U.S. at 146 (citing *Brecht*, 507 U.S. at 637).

### 1.      Instruction on Fresh Complaint Evidence

The state court instructed the jury that it could consider the testimony of C.'s mother to determine whether, when, and under what circumstances C.'s prior complaint regarding Guzman's alleged sexual abuse was made.  ECF No. 13-4 at 56; ECF No. 15-1 at 35.  The court declined Guzman's request to add the following two sentences to the fresh complaint evidence jury

United States District Court
Northern District of California

instruction: "It does not strengthen [C.'s] credibility.  It does not prove the underlying truth of the sexual offense."  ECF No. 14-7 at 112-14.  Guzman alleges that the trial court's resulting instruction deprived him of a fundamentally fair trial because he could not argue that C.'s statements to his mother were made up or misremembered.  ECF No. 1 at 89-90.

### a.   Procedural History

The state appellate court summarized the underlying facts and rejected Guzman's claim as follows:

> A.  Background
>
> Before trial, the court indicated it intended to give a fresh complaint limiting instruction. The parties agreed the instruction would apply to the testimony of C.'s mother. At trial, C.'s mother testified C. said something sexual had happened with Guzman, but she did not describe the specifics of the conversation. Defense counsel proposed a limiting instruction, but the court declined to give it. Instead, the court instructed the jury: "You have heard evidence that C[.] made complaints of inappropriate sexual conduct by the defendant to his mother, . . . before he reported that conduct to the police. You may only consider that evidence to determine (a) [w]hether there was a complaint made; (b) [w]hen the complaint was made . . . [and;] (c) under what circumstances the complaint was made. You may not consider C[.]'s out of court complaint of inappropriate sexual conduct made to his mother prior to the report to the police for the truth of the matter asserted."
>
> B.  The Court Properly Instructed the Jury on Fresh Complaint Evidence
>
> "[P]roof of an extrajudicial complaint, made by the victim of a sexual offense, disclosing the alleged assault, may be admissible for a limited, nonhearsay purpose – namely, to establish the fact of, and the circumstances surrounding, the victim's disclosure of the assault to others – whenever the fact that the disclosure was made and the circumstances under which it was made are relevant to the trier of fact's determination as to whether the offense occurred." (*People v. Brown* (1994) 8 Cal.4th 746, 749–750 (*Brown*).) The evidence is admissible only "for the limited purpose of showing that a complaint was made by the victim, and not for the truth of the matter stated. [Citation.] Evidence admitted pursuant to this doctrine may be considered by the trier of fact for the purpose of corroborating the victim's testimony, but not to prove the occurrence of the crime." (*People v. Ramirez* (2006) 143 Cal.App.4th 1512, 1522.) Thus, "only the fact that a complaint was made, and the circumstances surrounding its making, ordinarily are admissible; admission of evidence concerning details of the statements themselves, to prove the truth of the matter asserted, would violate the hearsay rule." (*Brown,* at p. 760.)
>
> The instruction did not contravene *Brown*. *Brown* held that "[s]o long

United States District Court
Northern District of California

as the evidence that is admitted is carefully limited to the fact that a complaint was made, and to the circumstances surrounding the making of the complaint, thereby eliminating or at least minimizing the risk that the jury will rely upon the evidence for an impermissible hearsay purpose, admission of such relevant evidence should assist in enlightening the jury without improperly prejudicing the defendant." (*Brown, supra,* 8 Cal.4th at p. 762.) The instruction here complied with *Brown* – it conveyed the limited purpose for which the jury could consider the fresh complaint evidence. The instruction did not foreclose Guzman's defense "that the allegations were made up or mis-remembered." In opening and closing arguments, defense counsel called attention to the delay between the abuse and C.'s complaint to his mother and suggested C. had a motive to lie.

*Guzman*, 2019 WL 155980, at *7–8.

### b.    Analysis

Guzman asserts that the trial court's instruction regarding fresh complaint evidence was derived from a misreading of *People v. Brown*, 8 Cal. 4th 746 (1994) and forced the jury to consider only the fact that the complaint was made, without considering the surrounding circumstances that may have undermined the complaint's veracity.  ECF No. 1 at 87-90. Respondent answers that Guzman's proposed instruction violated *Brown* by limiting how the jury could have considered the surrounding circumstances of C.'s report.  ECF No. 13-1 at 48-50.

The Court holds that there was no constitutional error from the fresh complaint jury instruction.  First, Guzman's arguments are grounded in state law and do not merit federal habeas relief.  Second, the trial court did not err by giving the instruction.  The trial court instructed the jury in a manner that specifically limited the fresh complaint evidence to its permitted purposes.

"[F]ederal habeas corpus relief does not lie for errors of state law." *Mcguire*, 502 U.S. at 67.  To warrant federal habeas relief, "a challenged jury instruction cannot be merely undesirable, erroneous, or even universally condemned, but must violate some due process right guaranteed by the fourteenth amendment." *Domingo v. Paramo*, No. 214CV1527GEBEFBP, 2016 WL 7212760, at *6 (E.D. Cal. Dec. 13, 2016).  Guzman asserts that the trial court's use of the fresh complaint evidence jury instruction, which omitted his requested language, deprived him of the ability to argue that a delayed disclosure of the alleged incident to C.'s mother harmed C.'s credibility.  ECF No. 1 at 90-91.  Guzman contends that he "was entitled to argue that evidence as evidence tending to show that the allegations were made up or mis-remembered" and that the

21

"court's erroneous instruction foreclosed precisely that defense." *Id.* at 90.  However, Guzman *did* argue that the circumstances surrounding C.'s disclosure to his mother undermined his credibility. Guzman emphasized both C.'s desire to avoid to the Job Corp program and the substantial delay in C.'s disclosure.  ECF Nos. 14 at 113-16 and 15 at 74-76.  The trial court's jury instruction therefore did not foreclose Guzman from arguing that C.'s allegations were made up or misremembered.  Guzman does not otherwise explain why any potential error in omitting his requested language in the jury instruction directly infected the entire trial in a way that violated his right to due process.  *Estelle*, 502 U.S. at 72.  *See also Murray v. Sherman*, No. 14-CV-02436-HSG (PR), 2016 WL 612918 at *10 (N.D. Cal. Feb. 16, 2016) (holding that a fresh complaint instruction was proper when it instructed jurors that a witness's "testimony was admissible only for the limited purpose to show that a complaint was made and the circumstances under which the complaint was made and could not be used for the truth of the matter asserted") (quotation marks omitted).  The Court rejects this claim.

### 2.    Instruction on Propensity Evidence (CALCRIM 1191)

The trial court instructed the jury that if it found the charged sexual abuse of C. to be true beyond a reasonable doubt, it could use that evidence to infer Guzman's propensity to commit the charged offenses against M., and vice versa, provided that the propensity evidence was only a factor to consider rather than determinative of guilt.  ECF No. 15-1 at 43-44.  Guzman asserts that the court's instruction on the use of propensity evidence – based on CALCRIM 1191 – was erroneous and deprived him of his due process right to a fair trial.  ECF No. 1 at 91-97.

### a.    Procedural History

The trial court provided the jury instruction, and the state appellate court rejected Guzman's claim, as follows:

> The people also presented evidence that the defendant committed the crime of lewd and lascivious acts as alleged in counts 1, 2, 3, 4, 5, 6. and the crimes of aggravated sexual assault as charged in count 7 as it applies to [C.]
>
> The people also presented evidence that the defendant committed lewd and lascivious acts as alleged in counts 8, 10, 11, and the crime of continuous sexual abuse as alleged in count 9 as it applies to [M.]. These crimes are defined for you in the instructions for these crimes.

United States District Court
Northern District of California

1
2
3
4
5

> If you decide that the defendant committed one of these charged offenses as it applies to [C.], you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit the enumerated charged crimes as they apply to [M.] If you decide that the defendant committed one of these charged offenses as it applies to [M.], you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit the enumerated charged crimes as they apply to [C.]

6
7
8
9

> If you conclude that the defendant committed a charged offense, that conclusion is only one factor to consider, along with all of the other evidence. It is not sufficient by itself to prove the defendant is guilty of another charged offense. The people must still prove each element of every charge beyond a reasonable doubt and prove it beyond a reasonable doubt before you may consider one charge for one alleged victim as proof of another charge as to the other alleged victim.

10
11

> Multiple counts [sic] separate offenses. Each of the counts charged in the case is a separate crime. You must consider each count separately and return a separate verdict form for each one.

12    ECF No. 15-1 at 1636-37.

13
14
15
16

> [FN4] Guzman argues the court erred by giving a modified instruction modeled on CALCRIM No. 1191. This claim fails in light of *People v. Villatoro* (2012) 54 Cal.4th 1152, 1164–1165, 1167. We decline to conclude *Villatoro* is distinguishable or wrongly decided. We also reject Guzman's cumulative error claim. (See *People v. Woodruff* (2018) 5 Cal.5th 697, 783.)

17    *Guzman,* 2019 WL 155980, at *8.

18                     **b.        Analysis**

19         Guzman argues that this jury instruction resulted in an unfair trial because the jury should

20    not have been permitted to infer propensity from one case to the other due to the cases' inherent

21    differences.  ECF No. 1 at 93.   He also asserts that *People v. Villatoro*, 54 Cal. 4th 1152 (2012)

22    was wrongly decided, and that the use of propensity evidence always violates due process.  ECF

23    No. 1 at 96.  Respondent points to other courts in this district that have rejected Guzman's

24    arguments.  ECF No. 13-1 at 52 (citing to *Raygoza v. Holland*, No. 16-CV-02978-EMC, 2018 WL

25    6002325 at *17-18 (N.D. Cal. Nov. 15, 2018) (discussing *Schultz v. Tilton*, 659 F.3d 941, 944-45

26    (9th Cir. 2011)); *Matias v. Gipson,* No. 14-CV-00526-JD, 2015 WL 5935324 at *9 (N.D. Cal. Oct.

27    13, 2015) (same)).

28         As discussed above, there was no error in consolidating the two cases.  And, as

United States District Court
Northern District of California

1   Respondent notes, other courts in this district have approved of the CALCRIM 1191 jury

2   instruction. *See Raygoza*, 2018 WL 6002325, at *17-18 ("[The] instruction specially cautioned

3   the jury that propensity evidence alone was insufficient to convict, that the propensity evidence

4   was just one factor along with other evidence to consider, and that the prosecution still had to

5   prove each element beyond a reasonable doubt."); *Matias*, 2015 WL 5935324, at *9 ("[Defendant]

6   has also not shown that this jury instruction so infected the entire trial that the resulting conviction

7   violated due process. The jury was properly instructed on the burden of proof in the other aspects

8   of this case and it is clear that the jury credited the testimony of the victims.")

9       This Court finds the reasoning of these courts, which in turn relied on the Ninth Circuit's

10  decision in *Shultz*, to be persuasive and correct. *Schultz* held that the jury may make inferences

11  from propensity evidence related to sexual conduct so long as the jury instructions unambiguously

12  limit the use of that evidence to its permitted purpose. *See Schultz*, 659 F.3d at 944-45

13  (determining that it was not a due process violation for the jury to infer propensity for a charged

14  offense of sexual conduct if it found that previous, uncharged sexual conduct was true by a

15  preponderance of evidence). The instruction in *Schultz* was constitutional because it

16  unambiguously required the jury find that the "evidence as a whole proved [the defendant] guilty

17  beyond a reasonable doubt." *Id.* at 945.

18      For Guzman's claim to have merit, there must be a reasonable likelihood that the jury

19  applied the instruction in a way that found Guzman "guilty on less than proof beyond a reasonable

20  doubt . . . . A meager possibility that the jury misapplied the instruction is not enough." *Raygoza*,

21  2018 WL 6002325, at *17. There is no reasonable likelihood that the jury misapplied the

22  instruction. The court told the jury that if it found the charges against one victim to be true, it

23  could, but was not required to, infer that Guzman was disposed or inclined to commit the charged

24  offenses of the other victim, but that that conclusion alone was not sufficient to prove guilt of the

25  other offense. The jury's ability to review each charge separately – as evidenced by the jury's

26  acquittal of several charges related to C.'s case – demonstrates that the jury properly applied this

27  instruction.

28      The instruction based on CALCRIM 1191 was not in error. It conformed with other

United States District Court
Northern District of California

24

1   propensity instructions approved by the Ninth Circuit and properly explained the appropriate use

2   of other charged sexual abuse acts.  Furthermore, as explained above, the Supreme Court has not

3   yet held that the admission of propensity evidence violates due process.  This Court therefore

4   cannot grant habeas relief on the basis that this propensity evidence jury instruction is inherently

5   prejudicial.

6        **D.      Cumulative Error Claim**

7        In his final claim, Guzman asserts that he is entitled to relief based on the cumulative effect

8   of all asserted errors.  In some cases, though no single trial error is sufficiently prejudicial to

9   warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much

10  that his conviction must be overturned.  *Alcala v. Woodford*, 334 F.3d 862, 893-95 (9th Cir. 2003).

11  However, for there to be such cumulative error, there must be more than one error.  *United States*

12  *v. Solorio*, 669 F.3d 943, 956 (9th Cir. 2012).  Here, the Court has considered and denied all of

13  Guzman's claims of constitutional error; consequently, there can have been no cumulative error

14  that warrants relief.  *Hayes v. Ayers*, 632 F.3d 500, 524 (9th Cir. 2011) ("Because we conclude

15  that no error of constitutional magnitude occurred, no cumulative prejudice is possible.").

16       **E.      Certificate of Appealability**

17       A district court must either grant or deny a certificate of appealability when it enters a final

18  order denying habeas relief.  28 U.S.C. § 2254 R. 11(a).  "A certificate of appealability may issue

19  . . . only if the applicant has made a substantial showing of the denial of a constitutional right,"

20  and it must specify which issues satisfy that standard.  28 U.S.C. § 2253(c)(2)-(3).  "Where a

21  district court has rejected the constitutional claims on the merits, the showing required to satisfy

22  § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find

23  the district court's assessment of the constitutional claims debatable or wrong."  *Slack v.*

24  *McDaniel*, 529 U.S. 473, 484 (2000).  Guzman has not made such a showing on any of his claims,

25  and the Court will therefore deny a certificate of appealability.

26  / / /

27  / / /

28  / / /

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### CONCLUSION

Guzman's petition for a writ of habeas corpus is denied, as is a certificate of appealability. The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated:  November 30, 2021



JON S. TIGAR
United States District Judge